[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on June 19, 1946 in Hamden, Connecticut and have resided in Connecticut since that time. There are three children issue of the parties, all of whom have reached their majority, two daughters and a son, the oldest of whom is 43 and the youngest of whom is 26. The youngest daughter has had serious problems which have contributed to the difficulties between the parties in recent years.
While this marriage has existed for forty-five years, during the last ten years the plaintiff has been living upstairs in her room and the defendant living downstairs in his room. Except for New Years Eve three years ago, there has been virtually no communication between the parties except for the verbal threats of the defendant to the plaintiff. The plaintiff during all of this period of time has lived like an animal and in constant fear that the defendant would force her out of the house. Her fears were not unfounded. She testified that in 1969 the defendant violently beat her for three hours. She did call the police and he was arrested and spent the night in jail. She did not seek medical attention and did not choose to press charges. She has testified that she has been so fearful of the defendant that she has not been able to seek help.
The plaintiff is 67 years of age. She receives Social Security benefits amounting to $70.00 per week and works part time as a meat wrapper at Stop Shop in Orange. She earns a weekly gross pay of $245.00 and a net pay of $187.99. She has worked about half of the time of the marriage. Her health is good although she states her legs get tired on the job.
The defendant is also 67 years of age. He has been retired for five years. Except for the last five years and the first six months of their marriage he has worked as a fuel truck driver and later as a burner repair man during all of the marriage. In 1962 or 1963 he had a fuel truck of his own and delivered fuel oil at the homes of his own customers. He testified that the business ended with a $5,000.00 loss because of too many uncollectible accounts receivable.
Over the years the defendant was able to save, so that at the time of his retirement he had $60,000.00. However, he has dissipated $43,000.00 of that amount by gambling. He has gone on trips to Las Vegas, and Atlantic City. He attends jai alai and the teletrack at least one or two times per week. He has paid the CT Page 109 mortgage, insurance and taxes and household expenses on the family home but gave the plaintiff nothing for her own support. She kept her own social security and earnings and supported herself living upstairs in the house. She cooked her food on a hot plate in her room and occasionally would sneak downstairs to use the microwave.
In 1954 the parties purchased land in East Haven for $900.00. They borrowed $9,800.00 on a mortgage, hired a carpenter and built the house themselves. When originally purchased the property was in joint names. In July 1980 the plaintiff quit claimed her interest in the property to the defendant. She did this upon his insistence and, as he expressed it, until her outstanding bills were paid. The defendant values the property in his financial affidavit at $125,000.00. On the witness stand he testified that in his opinion the property was worth somewhat less today, somewhere between $100,000.00 and $125,000.00. The property is subject to a mortgage with a principal balance of $6,000.00. (It was refinanced during the course of the marriage to pay bills.)
An incident in December caused the plaintiff to decide she had had enough. On February 1, 1991 she sought and obtained an ex parte restraining order and commenced these proceedings. She has affirmed, again, the allegations of her supporting affidavit. On February 15, 1991, at the hearing on the ex parte order, the parties agreed the restraining order could continue but that the defendant might return to the family home. On April 3, 1991, after a contested hearing on the plaintiff's motion for exclusive use and possession of the family home, the defendant was ordered to vacate the home within two weeks. The defendant thereafter filed an appeal. The plaintiff filed a motion to terminate the stay which was granted by the court. The appeal was subsequently dismissed.
The plaintiff seeks the house, lump sum alimony, counsel fees and periodic alimony. The defendant asks that the house be sold and the proceeds divided, seeks no alimony for himself, and requests that he not be ordered to pay alimony to the plaintiff. At the time the defendant vacated the premises at 42 Burgess Street, he took furniture with him. While the plaintiff does complain somewhat over this distribution of furnishings, no real disagreement has been raised between the parties on this issue.
As previously noted the plaintiff's health is generally good. The defendant has testified that he has a hiatal hernia, a peptic ulcer and hypertension.
In determining the proper orders in this case the court must consider the factors set forth in 46b-81 and 46b-82 of the General Statutes together with the provisions of 46b-62. With CT Page 110 respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 4 (1970); `This court has reiterated time and again that award of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980).
The court has considered all of the criteria of 46b-81 and46b-82 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234
(1982); Leo v. Leo, 1#97 Conn. 1, 5 (1985) and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage. CT Page 111
The court enters the following orders:
1. The marriage of the parties shall be dissolved on the grounds of irretrievable breakdown of the marriage.
2. The defendant shall pay periodic alimony to the plaintiff in an amount of $125.00 per week terminating upon the earliest to occur of the following events: the death of either of the parties, or the plaintiff's remarriage.
3. Pursuant to 46b-81 of the General Statutes an assignment of fifty-five (55%) percent of the defendant's interest in the real property known as 42 Burgess Street, East Haven, Connecticut to the plaintiff shall be entered upon the Land Records of the Town of East Haven subject to the existing first mortgage upon that property.
4. The plaintiff shall have the exclusive possession of the real property known as 42 Burgess Street, East Haven, Connecticut for a period of four (4) years from the date hereof or for such shorter period as she might choose. At the end of such period, the property shall be placed upon the market for sale. The broker, the listing price and all other terms and conditions of sale shall be the decision of the plaintiff. Upon the sale of the property, after the payments of the brokerage commission, customary closing adjustments and usual closing expenses, including reasonable attorney's fees upon the sale, the net proceeds of sale shall be paid over fifty-five (55%) percent to the plaintiff and forty-five (45%) percent to the defendant. During the period of the plaintiff's possession of the property and until the delivery of possession of the property upon the sale, the plaintiff shall be responsible for all expenses concerning the property including household insurance, real property taxes and ordinary repairs. Any single repair in excess of $250.00, shall be paid fifty-five (55%) percent by the plaintiff and forty-five (45%) percent by the defendant, the plaintiff being responsible for the first $250.00. In the event any liens are filed against either party's interest in this property, the party responsible for the same shall cause such lien to be discharged from his or her share of the net proceeds of sale.
5. The mortgage upon the property at 42 Burgess Street in East Haven shall be paid off from the proceeds of the $17,300.00 Certificate of Deposit in the defendant's name at New Haven Savings Bank. This shall be paid off upon the maturity of the Certificate of Deposit; until that time the mortgage shall be paid one-half by the defendant and one-half by the plaintiff.
6. The remaining balance of the Certificate of Deposit held in CT Page 112 the defendant's name at the New Haven Savings Bank shall be divided equally between the parties.
7. The tangible personal property (household goods and effects) in the possession of each of the parties shall be the property of the possessor free of any claim or demand by the other party.
8. The defendant's pension shall be his free of any claim or demand by the plaintiff except as his current monthly receipt of the same may be effected by the court's order of periodic alimony.
9. Whatever pension the plaintiff may be entitled to, if any, shall be wholly hers free of any claim or demand by the defendant.
10. The 1986 Oldsmobile Calais of the plaintiff's shall be hers free of any claim or demand by the defendant. The 1987 Oldsmobile Regency of the defendant's shall, be his free of any claim or demand by the plaintiff.
11. The defendant shall be wholly responsible for the liabilities set forth in his financial affidavit and shall indemnify and hold harmless the plaintiff from any claim or demands thereof.
12. The plaintiff shall be wholly responsible for the liabilities set forth in her financial affidavit and shall indemnify and hold harmless the plaintiff from any claim or demands thereon.
13. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing.
Edgar W. Bassick, III, Judge